IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

THE RIGHTTHING, LLC,

                Plaintiff,          Case No. 3:09 CV 135

-vs-

                                     MEMORANDUM OPINION

LAURIE BROWN,

                Defendant.

KATZ, J.

      This case is before the Court on Plaintiff The Right Thing, LLC's ("RTI") motion for a temporary restraining order (Doc. 5), and Defendant Laurie Brown's ("Brown") opposition (Doc. 7). Also, Brown files a motion to dismiss or transfer venue (Doc. 6) which RTI opposes (Doc. 10).

**I. Background**

      RTI specializes in enterprise recruitment process outsourcing, which serves employers that desire to recruit a large number of new employees. RTI hired Brown as Business Development Manager in November, 2007. In June, 2008, RTI sent Brown a Release & Unfair Competition Agreement ("Agreement"). Brown signed the Agreement on June 19, 2008. Throughout her employment, RTI claims to have given Brown complete access to RTI's confidential information, including proposals, pricing methodologies, client lists, client contracts, target clients, client processes, contracts, technologies, business strategies, financial strategies, employee lists, and financial data.

      Brown resigned from RTI in November, 2008 and began working for Manpower, Inc., one of RTI's competitors. RTI retained a computer expert to perform forensic analysis of Brown's RTI computer. The expert "found evidence of data sent via email to Gmail webmail accounts. This

electronically transmitted data includes email from the address lauri.brown@rightthinginc.com, some of which contained attached files." (Willard Aff. at ¶ 7). RTI argues that these files contain highly sensitive electronically stored information ("ESI").

As a result, RTI seeks a temporary restraining order (Doc. 5) to, among other things, enjoin Brown from: being employed by Manpower, soliciting or persuading an RTI employee or client from terminating their relationship with RTI, disclosing RTI's confidential information, accessing RTI computer files, and preserving data and documents that RTI has asked for. Brown opposes the TRO (Doc. 7), and files a motion to dismiss (Doc. 6) arguing that this Court does not have jurisdiction over her, and in the alternative, seeking a transfer of venue.

This Court shall address: (1) Brown's motion to dismiss for lack of personal jurisdicion; (2) Brown's motion for transfer of venue; and (3) RTI's motion for a temporary restraining order. **II. Personal Jurisdiction**

Brown, a California resident, submitted an affidavit to the Court stating that she has lived in California since her birth. (Brown Aff. at ¶ 4). The affidavit states that Brown was not involved in day to day operations of RTI, and that she worked as a sales representative from California. (Id. at ¶¶ 8-9). Brown argues that this Court should refuse to exercise personal jurisdiction over her because: (1) the Court has no basis for jurisdiction under the Ohio long-arm statute; (2) Brown was simply a non-resident employee hired by an Ohio company; (3) Brown's visits to Ohio have been minimal; (4) as a sales representative, Brown did not manage anyone in the company; and (5) the

Agreement's[1] forum selection clause is unenforceable because RTI did not provide consideration to Brown. Doc. 6 at 3-8.

RTI argues that the Court may exercise personal jurisdiction over Brown because Brown: (1) entered into an employment relationship with a company with a principal place of business in Ohio; (2) signed two different confidentiality agreements (the RTI handbook, and the Agreement); (3) signed the Agreement which contains an Ohio choice of law and jurisdiction provision; (4) received reports, proposals, and agreements directly from RTI's Ohio headquarters; (5) made periodic business trips to Ohio; and (6) accessed information stored on RTI's Ohio-based data servers. (Doc. 5 at p.19-20).

### A. Standard of Review

With regard to Brown's motion to dismiss, "[t]he procedural scheme which guides the district court in disposing of Rule 12(b)(2) motions is well-settled." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). The plaintiff bears the burden of establishing the court's personal jurisdiction over the defendants. *Id.*; *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). A plaintiff may not stand on its pleadings alone to meet this burden; he or she must "set forth specific facts showing that the court has jurisdiction." *Theunissen*, 935 F.2d at 1458.

"Presented with a properly supported 12(b)(2) motion and opposition, the court has three procedural alternatives: it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent

---

[1] Because the Court has not yet considered the validity of this Agreement, and the agreement is not conclusive evidence of personal jurisdiction, the Court need not consider the Agreement in this analysis. *See Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000) (mere existence of a contract ongoing for seventeen months is insufficient to confer personal jurisdiction).

factual questions." *Theunissen*, 935 F.2d at 1458 (citing *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). The method selected is left to the discretion of the district court. *Id*.

"When . . . a district court rules on a jurisdictional motion to dismiss . . . without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff . . . To defeat such a motion, [the plaintiff] need only make a prima facie showing of jurisdiction. Furthermore, a court . . . does not weigh the controverting assertions of the party seeking dismissal . . ." *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998) (quoting *CompuServe*, 89 F.3d at 1262). Dismissal is only proper if all the facts taken together fail to establish a prima facie case for personal jurisdiction. *CompuServe*, 89 F.3d at 1262.

### B. Discussion

In a diversity case, such as this, "[t]o determine whether personal jurisdiction exists over a defendant, federal courts apply the law of the forum state, subject to the limits of the Due Process Clause of the Fourteenth Amendment." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000); *CompuServe*, 89 F.3d at 1262. That is, personal jurisdiction exists over a nonresident "if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[ ] due process." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)). Ohio's long-arm statute does not extend personal jurisdiction to the limits of due process. *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 238, 638 N.E.2d 541 (1994); *see also Glasstech, Inc. v. TGL Tempering Systems, Inc*., 50 F.Supp.2d 722, 725 (N.D. Ohio 1999). "Plaintiff, therefore, must show: (1) the defendant is amenable to suit under

4

Ohio's long arm statute, and (2) allowing the defendant to be sued in Ohio does not contravene due process." *CompuServe*, 89 F.3d at 1262.

### 1. Ohio's Long-Arm Statute

The Ohio long-arm statute, Ohio Rev. Code § 2307.382(A), states that:

A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's: (1) Transacting any business in this state; (2) Contracting to supply services or goods in this state; (3) Causing tortious injury by an act or omission in this state; (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state; . . . (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

In this case, RTI argues that Ohio's long arm statute reaches Brown because she transacted business in Ohio. The Ohio Supreme Court has stated that "R.C. 2307.382(A)(1) and Civ.R. 4.3(A)(1) are very broadly worded and permit jurisdiction over nonresident defendants who are transacting any business in Ohio." *Muzzin v. Brooks*, 168 Ohio App.3d 231, 236, 859 N.E.2d 584, 588 (2006); *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc*., 53 Ohio St.3d 73, 75, 559 N.E.2d 477 (1990). "'Transact,' as defined by Black's Law Dictionary (5 Ed.1979) 1341, '[] means to prosecute negotiations; to carry on business; to have dealings []. The word embraces in its meaning the carrying on or prosecution of business negotiations but it is a broader term than the word 'contract' and may involve business negotiations which have been either wholly or partly brought to a conclusion[].'" *Kentucky Oakes Mall Co. v. Mitchell's Formal Wear, Inc*., 53 Ohio St.3d 73, 75, 559 N.E.2d 477, 480 (1990), *cert. denied*, 499 U.S. 975, 111 S.Ct. 1619, 113 L.Ed.2d

5

717 (1991). Moreover, "personal jurisdiction does not require physical presence in the forum state." *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 236, 638 N.E.2d 541, 544 (1994).

Brown disputes the validity of the Agreement she signed in June, 2008 and argues that the simple fact that she is a non-resident employee hired by an Ohio company to perform duties in California does not rise to the level of "transacting any business." Brown correctly points out that Ohio courts have resolved the determination of transacting business on "highly particularized fact situations." *U.S. Spring Communications Co. v. Mr. K's Foods, Inc.*, 68 Ohio St.3d 181, 185 (1994). Here, however, even without the allegedly invalid Agreement, RTI has come forward with sufficient evidence to satisfy subsection (A)(1) of the Ohio long-arm statue.

Brown was hired in November, 2007 by RTI, whose principal place of business is in Ohio, where Brown admits to have visited on occasion. She was officially a Business Development Manager, and according to her, she functioned as a RTI sales representative who, on behalf of the Ohio company, sold RTI services to companies in the west coast. Brown primarily communicated with RTI using her computer connection. Electronic transactions from one state into another are not immune from a court's consideration when determining personal jurisdiction. *See e.g. Premcor Refining Group, Inc. v. Born, Inc.* 2006 WL 83495 at *4 (N.D. Ohio, January 12, 2006). RTI alleges that Brown regularly received reports, proposals, and agreements directly from RTI's Ohio headquarters. Moreover, Brown regularly accessed information stored on RTI's Ohio-based data servers. Furthermore, Brown argues that one of the reasons that she sent herself the files was in anticipation of a possible claim for unpaid commissions, which is reasonably characterized as disagreements in Brown and RTI's business relations. Brown was clearly in business dealings with RTI. While this Court does not hold that an out-of-state employee of an Ohio corporation alone

6

constitutes "transacting any business," the Court finds that such a status is at least a step in that direction.  As a result, the Court considers the complete set of facts alleged by RTI in this case and concludes that Brown does satisfy subsection (A)(1) of the Ohio long-arm statue.

The Court also concludes that there is sufficient evidence to satisfy the Ohio long-arm statute under subsection A(4) for "[c]ausing tortious injury in [Ohio] by an act or omission outside this state if [she] regularly does . . . business, or engages in any other persistent course of conduct, or derives substantial revenue from . . . services rendered in this state."  Brown's electronic entry into RTI's Ohio computer system was an act committed outside of the State of Ohio that served to allegedly cause tortious injury, specifically, violations of the Trade Secrets Act, in Ohio.  Furthermore, Brown was regularly compensated by RTI for her work when she was an employee of the company.  Additionally, Brown regularly received reports, proposals, and agreements directly from RTI's Ohio headquarters and regularly accessed RTI's Ohio-based computer system.

### 2. Due Process Analysis

The Court must consider whether the exercise of personal jurisdiction over Brown would comport with the Due Process Clause.  Personal jurisdiction may be based on either general or specific jurisdiction.  *Bird*, 289 F.3d at 873.  "General jurisdiction is proper only where 'a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.'" *Id.* at 738 (quoting *Third Nat'l Bank in Nashville v. WEDGE Group Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)).  In contrast, specific jurisdiction is proper under circumstances "where a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Id.* at 874 (quoting *Helicopteros Nacionales*

7

*de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). Specific jurisdiction may be based on a single act. *Nationwide*, 91 F.3d at 794 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)).

Specific jurisdiction exists if Brown's contacts with Ohio satisfy the following test: "First, the defendant must purposefully avail [herself] of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 380 (6th Cir. 1968).

"This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts. There is a difference between what *World-Wide Volkswagen* [444 U.S. 286 (1980)] calls a mere 'collateral relation to the forum State,' and the kind of substantial relationship with the forum state that invokes, by design, 'the benefits and protections of its laws.' An understanding of this difference is important to the proper application of the 'purposeful availment' test." *Calphalon Corp.*, 228, F.3d at 721-722.

With regard to the first prong, Brown argues that she simply represented RTI in California and that her association with Ohio was attenuated because it just so happened that RTI's principal place of business was in Ohio. The Court disagrees. Notwithstanding the disputed Agreement in this case, RTI has alleged that Brown removed files, that allegedly contained trade secrets, from RTI's *Ohio-based* database. In doing so, Brown, reached the State of Ohio through her computer wires, removed the files from RTI's computer system, and returned them to California.

8

Furthermore, Brown regularly received files from Ohio and accessed RTI's Ohio-based computer system.

Under the second prong, where "a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *CompuServe*, 89 F.3d at 1267. The third prong requires the Court to consider whether "the consequences of the act or breach caused by the defendant have a substantial enough connection with the forum state." *Calphalon*, 228 F.3d at 724. Factors which a trial court may consider include "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *CompuServe*, 89 F.3d at 1268. Here, Brown's contacts with Ohio, namely removing files from RTI's Ohio-based computer system, are directly related to RTI's claim that Brown violated the Ohio Trade Secrets Act. Furthermore, the litigation of this case in Ohio, while may be onerous by causing Brown to travel, secures the State's interest in ensuring the enforcement of its laws. California's interest shall also be preserved when this matter is decided in the jurisdiction that is the center of this litigation, and for reasons further explained in the Court's transfer of venue analysis below.

**III. Transfer of Venue**

In the alternative, Brown requests that the Court transfer this case to the United States District Court Central District of California.

**A. Transfer of Venue Standard**

28 U.S.C. § 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1404(a) provides the district court with discretion to transfer a case

9

according to an "individualized, case-by-case consideration of convenience and fairness." *Stewart Organization v. Ricoh Corporation*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). The district court must weigh a number of case-specific factors such as the convenience of parties and witnesses, "public-interest factors of systemic integrity," and private concerns falling under the heading "the interest of justice." *Kerobo v. Sw. Clean Fuels Corp.*, 285 F.3d 531, 537 (6th Cir. 2002). "In exercising its discretion, the Court should keep in mind that a 'large measure of deference is due to plaintiff's freedom to select his own forum,' and according to the Supreme Court in *Gulf Oil Co. v. Gilbert*, [330 U.S. 501 (1947)] the 'plaintiff's choice of forum should seldom be disturbed unless the balance is strongly in favor of the defendants.'" *Tyler v. Sento Corp.*, 2008 WL 4999985 at *8 (N.D.Ohio Nov. 25, 2008).

Brown argues that Central California is a more convenient forum because Brown resides in California and the alleged events occurred in California, not Ohio. At the TRO hearing, RTI stated that RTI's only potential out-of-state witnesses aside from Brown include two possible expert witnesses from Texas. All of the other witnesses are from Ohio, including several RTI employees and computer technicians. Furthermore, the computer servers are all located in Ohio. On Brown's side, there is a chance she will call upon an out-of-state expert witness.

The chance that a few potential expert witnesses may be from out-of-state does not necessarily disturb the convenience of parties or witnesses to the extent required to transfer venue. In today's court rooms, the ability to utilize remote access technologies to testify via the internet and television has never been easier. Here, the majority of the witnesses are in Ohio and for those who are not, abundant technology will help to conveniently bring their testimony to Ohio. The Court places significance on the potential damages that misappropriation of trade secrets may cause in the

10

State of Ohio that would be substantiated by mostly Ohio witnesses. Clearly, the forum selection by Plaintiff in this case has not been shown to be outweighed or defeated by the demonstration that the balance is strongly in favor of the Defendant. Furthermore, mitigating in favor of retaining venue in this district is that this Court, while not having the exclusive ability to interpret Ohio law, is at least more familiar than a California court with that law. For the foregoing reasons, Brown's motion to transfer venue will be denied. The court finds that venue is proper here and that the interests of justice and convenience of the parties and witnesses are met in this jurisdiction.

**IV. Temporary Restraining Order**

RTI argues that the Court should grant a temporary restraining order to enforce the Agreement signed by Brown in June, 2007 and to prevent the misappropriation of trade secrets.

**A. Standard of Review**

A temporary restraining order is an extraordinary remedy whose purpose is to preserve the status quo. In the Sixth Circuit, it is well settled that the following factors are to be considered in making this determination:

> (1) Whether the movant has shown a strong or substantial likelihood or probability of success on the merits; (2) Whether the movant has shown irreparable injury; (3) Whether the issuance of a preliminary injunction [TRO] would cause substantial harm to others; and (4) Whether the public interest would be served by granting injunctive relief.

*Mason County Med. Ass'n v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977).

The Court must balance these factors. *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004). Plaintiff has the burden of persuasion on each of the factors because a TRO is an extraordinary remedy granted only where preventative or protective relief is required. *Sternberg v. Checker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978).

11

RTI bases the motion for a TRO on: (1) misuse of trade secrets under Ohio law, and (2) the Release & Unfair Competition Agreement[2] signed by Brown.

### 1. Misuse of trade secrets

Under Ohio law, "[a]ctual or *threatened* misappropriation may be enjoined." R.C. § 1333.62 (emphasis added). In *The Procter & Gamble Co. v. Stoneham*, the court explained the "threat of harm":

> [A]n actual threat of harm exists when an employee possesses knowledge of an employer's trade secrets and begins working in a position that causes him or her to compete directly with the former employer or the product line that the employee formerly supported. . . . [A] threat of harm warranting injunctive relief can be shown by facts establishing that an employee with detailed and comprehensive knowledge of an employer's trade secrets and confidential information has begun employment with a competitor of the former employer in a position that is substantially similar to the position held during the former employment.

140 Ohio App.3d 260, 274 (2000). Here, RTI has failed to submit evidence indicating that Brown actually used RTI's trade secrets. As a result, RTI seeks relief under a threat of misappropriation theory. The statutory definition of "misappropriation" includes any of the following:

> (1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;
> (2) Disclosure or use of a trade secret of another without the express or implied consent of the other person by a person who did any of the following:
> (a) Used improper means to acquire knowledge of the trade secret;
> (b) At the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret . . . was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or was derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use;

---

[2] Is important to note that although the Agreement contains a two year non-compete provision, RTI's motion states that "RTI is not seeking a TRO to enforce the non-compete, but is seeking enforcement of the confidentiality provisions of the Agreement." Doc. 5 at 6. In a footnote, RTI further clarifies its position: "Brown resides in California which does not enforce non-complete agreements." *Id.* at 1 fn. 1.

> "Improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means.

R.C. § 1333.61(B, A).

The definition of "trade secret" is:

> [I]nformation, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:
> (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
> (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

R.C. § 1333.61(D).

The following factors have been followed by Ohio courts to determine whether information constitutes a "trade secret":

> (1) the extent to which the information is known outside the business, (2) the extent to which it is known to those inside the business, i.e., by the employees, (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information, (4) the savings effected and the value to the holder in having the information as against competitors, (5) the amount of effort or money expended in obtaining and developing the information, and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*Pyromatics v. Petruziello*, 7 Ohio App.3d 131, 131 (1983).

The Court must determine whether RTI has established, with a probability of success, that: (1) the documents Brown sent to her personal email account were "trade secrets"; (2) the act of Brown sending document to her personal email address constitutes "misappropriation"; and (3) RTI has experienced a "threat of harm."

13

With regard to whether the documents at issue are trade secrets, RTI is most concerned with documents that contain the following information: processes and suppliers, consumer sales data, profit margin data, recruitment cost calculator, and business proposals to clients. RTI maintains that this information is not known outside of the business and that RTI has gone out of their way to protect these files with computer passwords. RTI fears that Brown could divulge these documents to Manpower which would save Manpower from the consuming and expensive steps that RTI took to develop the documents. Furthermore, RTI believes that Manpower could use the data to conduct marketing, target RTI's most profitable customers, and undercut RTI's prices enough to win over RTI's clients. RTI has submitted a list of the document names that Brown sent to her personal email account which appear to identify the information RTI fears will be disclosed. Doc. 4 at Ex. B. In light of these facts, RTI has sufficiently satisfied the probability of success burden in establishing as trade secrets the documents that contain the information on: processes and suppliers, consumer sales data, profit margin data, recruitment cost calculator, and business proposals to clients.

The Court is cognizant that, when resolving a matter involving trade secrets, a court must weigh "the conflicting rights of an employer to enjoy the use of secret processes and devices which were developed through his own initiative and investment and the right of employees to earn a livelihood by utilizing their personal skills, knowledge and experience." *Valco Cincinnati Inc. v. N&D Machine Service, Inc.*, 24 Ohio St.3d 41 (1986) (citing *GTI Corp. v. Calhoon*, 309 F.Supp 762, 768 (S.D. Ohio 1969)). As a result, the Court makes no conclusive or binding ruling that the above mentioned documents are trade secrets. Rather, the Court has been convinced under the standard for a TRO that, at this juncture, such documents are to be treated as trade secrets until the expiration of this order.

14

Next, the Court shall address whether the act of Brown sending these document to her personal email address constitutes "misappropriation" and whether RTI has experienced a "threat of harm." *See The Procter & Gamble Co.,* 140 Ohio App.3d at 274-275 (finding a "very real threat" when an employee with knowledge of trade secrets began working for a competitor who could use the information "to avoid the time-consuming and expensive steps . . . to develop the information"). There are two reasons that this Court answers both questions affirmatively. First, the time between Brown's separation from RTI and when Brown sent the documents to herself create reason for pause. Brown sent all but one of the documents between October 23, 2008 and November 4, 2008. She stopped working for RTI in November, 2008. Second, the speed at which Brown began working for RTI's competitor, almost immediately after her separation with RTI, has caused RTI to reasonably believe that Brown was in employment discussions with Manpower before her separation from RTI and close to the time that she sent the documents to her personal email address. The Court considers Brown's immediate switch from RTI to Manpower combined with the timing of the emails to satisfy the probability of success standard.

In addition to preventing Brown from the use and disclosure of trade secrets, RTI asks the Court to preclude Brown from working for any company engaging in competition with RTI for a reasonable time. RTI argues that it would be impossible for Brown to engage in head-to-head competition without taking commercial advantage of RTI's trade secrets. *See Allis-Chalmers v. Continental*, 255 F. Supp 645 (E.D. Mich. 1966). However, the Court is not convinced that this is necessary. Presumably, Manpower has its own clients, strategies, and billing methods for which Brown may utilize her own skill, knowledge, and experience without requiring the use or disclosure of RTI's documents.

15

In the instant case, RTI alleges similar kinds of threatened injuries as plaintiffs in other cases where courts have granted injunctive relief.  *See Valco*, 24 Ohio St.3d at 48 (purpose of injunction was to prevent appellants from being unjustly enriched, prevent the disclosure of secrets, and protect appellants secrets).  Here, RTI alleges that if Brown misappropriates RTI's trade secrets, RTI's secrets will be disclosed, Manpower could target RTI's most profitable customers, or Manpower could undercut RTI prices just enough to acquire RTI's current clients.  *See* R.C. § 1333.62 (injunctions are meant to eliminate commercial advantage that otherwise would be derived from the misappropriation).

For the foregoing reasons, the Court grants RTI's motion for a temporary restraining order prohibiting Brown from the use and disclosure of RTI's trade secrets.  In particular, Brown is prohibited from the use and disclosure of documents that contain information regarding: processes and suppliers, consumer sales data, profit margin data, recruitment cost calculator, and business proposals to clients.

### 2. Agreement

On June, 16, 2007, Plaintiff signed the Agreement which provides that "Employee agrees . . . to maintain all Confidential Information and Other Proprietary Information and property in strict confidence . . . and [not] . . . divulge or disclose it to any third party."  Doc. 1 at Ex. A.  The Agreement defines "Confidential Information" as "customer information . . . , financial and other strategic reports . . . information on how services are or may be offered to customers . . . , other trade secrets, and all other proprietary information and property of Employer."  *Id*.  The Agreement defines "Other Proprietary Information and Property" as "systems, computer software, market approaches, intellectual property, proposed aquisitions . . . agreements, documents, and other papers

16

and electronic . . . records which are owned or are otherwise in the possession of the Employer." *Id*. The Agreement goes on to say that "[u]pon termination . . . Employee shall not retain any Company Materials." *Id*.

RTI argues that Brown should be enjoined from breaching the confidentiality provisions of the Agreement and to do so the Court should prohibit Brown from being employed at Manpower. *See B.F. Goodrich v. Wohlgemuth*, 117 Ohio App. 493 (9th Dist. 1963) (prohibiting an employee with trade secrets from working for a competitor).

Brown responds by arguing that the Agreement is unenforceable for a number of reasons. First, Brown claims that the Agreement provided no consideration to Ms. Brown. Under Ohio law, as both parties have indicated in their briefs, restrictive covenants are enforceable even when signed by an exisiting at-will employee who recieves no new consideration other than continuation of employment. *Lake Land Employment Group of Akron v. Columber*, 101 Ohio St. 3d 242 (Ohio 2004). However, here, the Agreement given to Brown months after she began working for RTI states that it "shall not be construed as creating or evidencing any separate or independent obligation of the Employer . . . to retain [Brown] as its employee." Doc. 1 at Ex. A. Second, Brown argues that RTI has not presented evidence that Brown has or would disclose confidential information or other proprietary information. Third, Brown argues that the Agreement is unconscionable and a contract of adhesion because she could not negotiate it and RTI told Brown that she must sign the agreement or be fired.

Brown also distinguishes *Goodrich*, 117 Ohio App. 493 from the case at bar. In *Goodrich*, the defendant employee threatened the plaintiff employer that he would use the employer's trade secrets for the proprietary benefit of a competitor that had hired the defendant. *Id.* at 498. Such

17

statements, in combination with other evidence, caused the court to enjoin the defendant from working for the competitor. *Id.* at 499. Here, RTI does not suggest that Brown ever made similar statements as the defendant in *Goodich*.

Because the Court has already decided to enjoin Brown from the use and disclosure of RTI's trade secrets based on the Ohio Trade Secrets Act, the Court need not address the Agreement at this juncture. Further evidentiary consideration is required. This issue is preserved for dispositive motions or trial.

**V. Conclusion**

The Court grants in part Plaintiff's motion for a temporary restraining order (Doc. 5). The Court grants RTI's motion for a temporary restraining order prohibiting Brown from the use and disclosure of RTI's trade secrets. In particular, Brown is prohibited from the use and disclosure of documents that contain information regarding: processes and suppliers, consumer sales data, profit margin data, recruitment cost calculator, and business proposals to clients. The Court denies in part Plaintiff's motion for a temporary restraining order (Doc. 5). At this juncture, the Court will not bar Brown from employment with Manpower, reserving that issue for a later day.

The Court denies Defendant's motion to dismiss for personal jurisdiction or transfer of venue (Doc. 6).

A telephone conference is set for February 4, 2009 at 9:00 a.m.

IT IS SO ORDERED.

    s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE