IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


THE RIGHTTHING, LLC,

                    Plaintiff,                  Case No. 3:09 CV 135

      -vs-

                                    <u>MEMORANDUM   OPINION</u>

LAURIE BROWN,

                    Defendant.

KATZ, J.

This matter is before the Court on Plaintiff The RightThing, LLC's ("RTI") motion for modification of the temporary restraining order (Doc. 39) which Defendant Lauri Brown ("Brown") opposes (Doc. 42).  On June 18, 2009, the Court held a hearing on this motion.  RTI filed a post-hearing brief (Doc. 45) to which Brown responded (Doc. 46).

## I.  Background

In a February 2, 2009 memorandum opinion granting in part Plaintiff's first motion for a temporary restraining order ("TRO") (Doc. 5), the Court summarized the background as follows:

> RTI specializes in enterprise recruitment process outsourcing, which serves employers that desire to recruit a large number of new employees.  RTI hired Brown as Business Development Manager in November, 2007. In June, 2008, RTI sent Brown a Release & Unfair Competition Agreement ("Agreement").  Brown signed the Agreement on June 19, 2008. Throughout her employment, RTI claims to have given Brown complete access to RTI's confidential information, including proposals, pricing methodologies, client lists, client contracts, target clients, client processes, contracts, technologies, business strategies, financial strategies, employee lists, and financial data.
> Brown resigned from RTI in November, 2008 and began working for Manpower, Inc., one of RTI's competitors. RTI retained a computer expert to perform forensic analysis of Brown's RTI computer. The expert "found evidence of data sent via email to Gmail webmail accounts. This electronically transmitted data includes email from the address lauri.brown@rightthinginc.com, some of which contained attached files." (Willard Aff. at ¶ 7). RTI argues that these files contain highly sensitive electronically stored information ("ESI").

> As a result, RTI seeks a temporary restraining order (Doc. 5) to, among other things, enjoin Brown from: being employed by Manpower, soliciting or persuading an RTI employee or client from terminating their relationship with RTI, disclosing RTI's confidential information, accessing RTI computer files, and preserving data and documents that RTI has asked for.

(Doc. 11, 12); *The RightThing, LLC v. Brown*, Case No. 3:09 CV 135, 2009 WL 249694 at *1 (N.D.Ohio, Feb. 2, 2009).  For the reasons explained in the February 2, 2009 memorandum opinion, the Court determined that, for the purposes of the TRO "strong likelihood of success" standard, RTI established that: (1) the documents Brown sent to her personal email account are to be treated as "trade secrets"; and (2) the alleged misappropriation of trade secrets caused RTI to experienced a threat of irreparable harm.  *Id.* at **6-9.

In the February 2, 2009 opinion, the Court also considered RTI's request to enjoin Brown from working at Manpower:

> RTI argues that it would be impossible for Brown to engage in head-to-head competition without taking commercial advantage of RTI's trade secrets. *See Allis-Chalmers v. Continental*, 255 F. Supp 645 (E.D. Mich. 1966). However, the Court is not convinced that [enjoining Brown from working at Manpower] is necessary. Presumably, Manpower has its own clients, strategies, and billing methods for which Brown may utilize her own skill, knowledge, and experience without requiring the use or disclosure of RTI's documents.

*Id.* at *9.  Nonetheless, the Court ordered that "Brown is prohibited from the use and disclosure of documents that contain information regarding: processes and suppliers, consumer sales data, profit margin data, recruitment cost calculator, and business proposals to clients."  *Id.* at 11; (Doc. 19). On March 12, 2009, the Court issued a stipulated protective order.  (*See* Doc. 18, 19).

In RTI's motion for modification of the temporary restraining order (Doc. 39), RTI argues that newly discovered evidence requires "stronger injunctive relief."  (Doc. 39-2 at 8).  According to RTI, this "newly discovered evidence" is that "around the time that [Brown] began her

2

employment with Manpower . . . Brown transmitted RTI business information to other [Manpower] employees, who then shared that information among themselves."  (Doc. 39-2 at 2, Ex. B).  Thus, RTI asks the Court to place a temporary restraining order prohibiting Brown from the eleven activities discussed below, including "being employed by or providing any information, services, or assistance to Manpower, Inc."  (Doc. 39-1).

## II. Standard of Review

"Generally, a district court has the authority to modify its injunctive decrees where changed circumstances require modification so as to effectuate the purposes underlying the initial grant of relief."  *Pro Edge L.P. v. Gue*, 411 F.Supp.2d 1080, 1086-87 (N.D. Iowa 2006) (citing Fed.R.Civ.P. 60(b)(5); *Rufo v. Inmates of the Suffolk County Jail*, 502 U.S. 367, 384, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992) ("Modification ... may be warranted when changed factual conditions make compliance with the decree substantially more onerous").

In determining whether to issue a temporary restraining order, the Court must consider: (1) whether the claimant has demonstrated a strong likelihood of success on the merits, (2) whether the claimant will suffer irreparable injury, (3) whether granting the temporary restraining order will cause substantial harm to others, and (4) whether the public interest is best served by granting injunctive relief.  *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000).  These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together. *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991).  Plaintiff has the burden of persuasion on each of the factors because a TRO is an extraordinary remedy granted only where preventative or protective relief is required.  *Sternberg v. Checker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978).

3

## III.  Discussion

The question before the Court is whether stronger injunctive relief is necessary due to the confirmation of RTI's suspicion that Brown sent emails with alleged trade secrets to Manpower employees.  Brown's January 6, 2009 affidavit states that "[t]o my knowledge, I have not divulged any trade secret or confidential information of RTI."  (Brown Aff. ¶ 23).  Brown argues that the documents in question are not trade secrets and/or confidential documents.  (Brown Aff. ¶ 21, 22).

RTI claims that Brown has not been truthful in her affidavit.  RTI submits Manpower's admission that Brown sent an eighty-four page document, a composite of several RTI client proposals, to Manpower employee Mohamed Captan sometime before November 6, 2008 which she took from RTI's Findlay, Ohio computer file server.  This document was allegedly attached to emails sent to two other Manpower employees, one of which was titled "shhh. secret."  (Doc. 39 at 3-4; Ex. MP0115-199, MP0115, MP0029, filed under seal).  Manpower's investigation also allegedly concluded that Brown had shared several other documents containing study reports, presentations to clients, and sample reports.  (Doc. 39 at 4).

### A. RTI's Proposed TRO

RTI requests that, due to the previously described "new evidence," the Court should make eleven additions (Doc. 39-1, A-K) to the Court's February 2, 2009 order granting limited injunctive relief.   The Court considers these additions (A-K) below.

### 1. Employment at Manpower (Request "A")

RTI requests that the Court enjoin Brown from: "A. Being employed by or providing any information, services or assistance to Manpower, Inc."  (Doc. 39-1).

4

Courts have recognized that, in some situations, the only effective way to prevent disclosure and misuse of trade secrets is to bar the defendant from working for a direct competitor. *See Emery Industries, Inc. v. Cottier*, 202 U.S.P.Q. (BNA) 829; 1978 U.S. Dist. LEXIS 15953 (S.D. Ohio 1978); *Allis-Chalmers v. Continental*, 255 F. Supp. 645 (E.D. Mich. 1966).  In both *Cottier* and *Allis-Chalmers*, the courts found that it would be a "virtual impossibility" for the plaintiff's former employee to perform his prospective duties to the best of his ability for his new employer without giving the new employer "the benefit of [plaintiff's] confidential information." *Cottier* at *17.  In both *Cottier* and *Allis-Chalmers*, the courts imposed an injunction prohibiting the defendants from working for direct competitors for a particular time.

Here, RTI argues that it would be a "virtual impossibility" for Brown to remain in competition with RTI without disclosing trade secret information.  However, both of the aforementioned cases dealt with high level employees who had very specific and detailed knowledge of their former employer's business and products.  In *Cottieri*, the employee was a chemical engineer and the manager of his former employer's ozone technology group and the employee left to lead a competitor's ozone equipment group.  In *Allis-Chalmers*, the employee was the head of the fuel system laboratory and became intimately involved in the development of a specified distributor fuel injection pump and all functional research and testing of this pump. The employee then wanted to work for a competitor developing the same type of fuel injection pump.  The court enjoined him from working on the design and development of distributor type pumps, but allowed him to continue to be employed with his new employer performing other duties.

5

RTI's business does not involve, or at least Brown did not conduct (nor does Manpower), the development of a specialized product for a technical field or developing industry.  She is a salesperson.  Presumably, Manpower has its own clients, strategies, and billing methods for which Brown may utilize her own skill, knowledge, and experience without requiring the use or disclosure of RTI's documents.  Furthermore, Brown and other employees have been given sufficient warning and notice from both this Court and Manpower regarding the use and disclosure of potential trade secrets.  Manpower has required employees, including Brown, to acknowledge that that they had not used, and will not use, any such materials or any information contained in the materials at issue for any business purpose.  (Dizard Aff. ¶ 4).  In addition, Manpower is requiring the employees involved, including Brown, to contact Manpower's Legal Department before contacting any customer referenced in any part of RTI's business materials received, or becoming involved, directly or indirectly, in soliciting or servicing any such customers on Manpower's behalf.  (Dizard Aff. ¶ 5).

In their May 7, 2009 brief, RTI states that Manpower's response when confronted with evidence of misappropriation "was inadequate and unrealistic."  (Doc. 39-2 at 9).  RTI's brief argues that "[r]ather than terminating or suspending Lauri Brown and the others for violating Manpower's company rules against misappropriating confidential information and trade secrets, Manpower's response was to simply shake its finger at the misappropriators and tell them not to use the information."  (Doc. 39-2 at 10).  RTI updated their argument to the Court during the June 18, 2009 hearing on this motion.

During the June 18, 2009 hearing on this motion, RTI expressed that Manpower has taken sufficient steps to avoid any further dissemination and use of the documents RTI seeks to protect.

6

Counsel for RTI stated that the reason that RTI has not attempted to add Manpower as a party is that Manpower has done everything possible to prevent the dissemination and use of alleged trade secrets, that in-house and outside counsel for Manpower have been diligent and effective, and that RTI believes that no legal device or court order to bind Manpower would be necessary.

Indeed, Manpower conducted an investigation and discovered that Brown sent RTI documents to a Manpower employee.  (Dizard Aff. ¶ 2, 3).  Upon learning about this, Manpower issued each of the employees involved, including Brown, a warning and notice requiring them to acknowledge that: (1) they had reported to Manpower's Legal Department any third party business materials provided by Brown and pertaining to RTI that were in their possession or electronically stored in any of Manpower's equipment or media; and (2) that they had not used, and will not use, any such materials or any information contained in those materials for any business purpose.  (Dizard Aff. ¶ 4).  In addition, Manpower is requiring the employees involved, including Ms. Brown, to contact Manpower's Legal Department before contacting any customer referenced in any part of RTI's business materials received, or becoming involved, directly or indirectly, in soliciting or servicing any such customers on Manpower's behalf.  (Dizard Aff. ¶ 5).  Manpower has indicated that failure to comply with such directives may result in diciplinary action, up to and including termination.  (Dizard Aff. ¶ 6).  Manpwer has taken further actions to confidentially maintain all of RTI's business materials identified during Manpower's internal investigation.  (Dizard Aff. ¶¶ 9-11).  RTI has not, and does not anticipate that it will seek relief, injunctive or otherwise, against Manpower.

The Court's February 2, 2009 order enjoined Brown from the use or disclosure of potential trade secrets.  RTI has failed to submit any evidence that Brown failed to comply with the Court's

order.   The fact that Brown's January 6, 2009 affidavit states that "[t]o my knowledge, I have not divulged any trade secret or confidential information of RTI," despite Manpower's admission that Brown sent an eighty-four page composite of RTI client proposals in November 2009 does not necessarily mean that Plaintiff was untruthful in her affidavit.  This Court's February 2, 2009 order concluded that, under the TRO strong probability of success standard, RTI established that the documents Brown sent to her personal email account must be treated as trade secrets and not that the documents, conclusively, are trade secrets.

For the foregoing reasons, RTI's renewed request to enjoin Brown from being employed by or providing any information, services or assistance to Manpower, Inc. is not well taken.

### 2. Solicitation of RTI employees and customers (Request "B")

RTI requests that the Court enjoin Brown from "B. Directly or indirectly soliciting or persuading, or attempting to solicit or persuade, any employee of RTi to terminate his or her service with RTi or any customer of RTi to terminate its relationship with RTi." (Doc. 39-1).

RTI has not advanced any arguments regarding the reason for, or relevance of,  this relief. Presumably, RTI believes that by soliciting RTI employees or customers, one of the following would occur: (1) the use or disclosure of a potential trade secret; or (2) a violation of the non-compete portion of the Release & Unfair Competition Agreement ("Agreement").  (Doc. 3-2). With regard to the first possibility, there is not a sufficient likelihood that such solicitations would result in the use or disclosure of trade secrets.  With regard to the second possibility, RTI has on several occasions explicitly stated that they are not interested in attempting to enforce the non-compete portion of the Agreement. (Doc 5-2 at 1); (Doc. 39-2 at 2-3).

### 3.  Disclosing confidential information (Requests "C-F")

8

RTI requests that the Court enjoin Brown from:

C.  Directly or indirectly disclosing or conveying confidential information to any person or entity outside of RTi or using any confidential information for any purpose not authorized by Rti, including but not limited to customer information, information pertaining to any persons screened, interviewed, considered and/or placed with and on behalf of customers, copies of and information with respect to contracts with customers and their clients, monitoring and marketing quality assurance programs, training programs, pricing, marketing, management, financial and other internal strategic reports, returns and information, information on how services are or may be offered to customers, directly or indirectly, other trade secrets, and all other proprietary information and property of RTi, including, but not limited to systems, computer software and applications, market approaches, intellectual property, proposed acquisitions, market strategies and plans, financial information, agreements, documents and other papers and electronic and other records which are owned or are otherwise in the possession of RTi in connection with the operation of RTi's business';

D.  Directly or indirectly disclosing to Manpower, Inc. information about RTi's employees or customers, or any other information described in paragraph C above;

E. Directly or indirectly disclosing to anyone other than her legal counsel, information described in paragraph C, whether derived from RTi documents and data, or retained in her memory;

F. Accessing RTi computer files or data which are in her possession or are under her control, or transmitting them by any means, to the computer or other storage device of any person or entity whose business offers services competitive with RTi's, including but not limited to Manpower, Inc., or any computer in the possession or control of any person employed by Manpower, Inc. or affiliated with it, or to any other person;

(Doc. 39-1).

These requests essentially offer examples of ways by which Brown may use or disclose alleged trade secrets.  On February 2, 2009, this Court has ruled that "Brown is prohibited from the use and disclosure of documents that contain information regarding: processes and suppliers, consumer sales data, profit margin data, recruitment cost calculator, and business proposals to clients."  *The RightThing*, 2009 WL 249694 at *11.  There is no evidence that Brown violated the Court's order.  Furthermore, Manpower, who RTI has not attempted to name in this suit for reasons explained above, has taken several steps to the satisfaction of RTI to prohibit the use or

9

disclosure of potential trade secrets.  For example, Manpower is requiring the employees involved, including Ms. Brown, to contact Manpower's Legal Department before contacting any customer referenced in any part of RTI's business materials received, or becoming involved, directly or indirectly, in soliciting or servicing any such customers on Manpower's behalf.  (*See* Dizard Aff. ¶ 4-12).

### 4. Discovery requests (Requests"G-K")

RTI requests that the Court require Brown to:

G. Preserve, and not destroy or delete, any documents or data which she has been ordered to deliver to Rti;
H. Immediately deliver to RTi all originals and all copies of documents and data acquired from RTi, whether in hard copy or electronically stored, referring or related to information described in paragraph C above;
I. Immediately make available, for the purpose of cloning and forensic analysis, all computers, drives, memory cards, and other electronic storage devices and media used by her, whether at home or at some other location, at any time during her employment by RTi or since her resignation from RTi;
J. Immediately disclose to RTi counsel all addresses used by her to receive or send email or Gmail at any time during her employment by RTi or since her resignation from RTi, and provide whatever written authorizations are required by the email service providers to enable RTi counsel to obtain a copy of all the contents of all such email and Gmail accounts; and
K. Immediately deliver to RTi all other property that she acquired from RTi and has not received RTi's written permission to retain.

(Doc. 39-1).

These are discovery requests.  They are not relevant to RTI's motion to modify the TRO which is based on Ohio trade secret law.  RTI must follow the familiar methods of conducting discovery in this case: interrogatories, depositions, requests for admissions, etc.  If there is a reason that a TRO is necessary, RTI must fully explain its reasons to the Court.  As always, should discovery disputes arise throughout the litigation, the parties have numerous ways to settle their disputes, including the filing of appropriate motions at the appropriate times.

10

**B. Agreement**

On June, 16, 2007, Plaintiff signed the Agreement which provides that "Employee agrees . . . to maintain all Confidential Information and Other Proprietary Information and property in strict confidence . . . and [not] . . . divulge or disclose it to any third party." (Doc. 1 at Ex. A).  The Agreement defines "Confidential Information" as "customer information . . . , financial and other strategic reports . . . information on how services are or may be offered to customers . . . , other trade secrets, and all other proprietary information and property of Employer."  (*Id*.).  The Agreement defines "Other Proprietary Information and Property" as "systems, computer software, market approaches, intellectual property, proposed aquisitions . . . agreements, documents, and other papers and electronic . . . records which are owned or are otherwise in the possession of the Employer." (*Id*.).

The Agreement goes on to say that "[u]pon termination . . . Employee shall not retain any Company Materials."  (*Id*.).  RTI argues that Brown should be enjoined from breaching the confidentiality provisions of the Agreement and to do so the Court should prohibit Brown from being employed at Manpower.  See B.F. Goodrich v. Wohlgemuth, 117 Ohio App. 493 (9th Dist. 1963) (prohibiting an employee with trade secrets from working for a competitor).

*The RightThing*, 2009 WL 249694 at *10.

At the June 18, 2009 hearing on the pending motion, the Court asked whether the definition of "confidential information" found in this contract is enforceable.   RTI contends that because it has declared certain information "confidential" by contract, the Court must honor such a declaration even if the information is not otherwise "confidential."

RTI's post-hearing brief states that in *Basicomputer Corp. v. Scott*, 791 F. Supp. 1280 (N.D. Ohio 1991), the court deferred to the parties' contractual definition of "trade secrets" and "confidential information."  RTI argues that *Basiccomputer* is controlling partially because it too arose in the context of sales and marketing.  Brown disagrees and distinguishes *Basiccomputer* on the grounds that the agreement at issue in that case required employees to sign it before beginning employment and the employees had the opportunity to negotiate the terms of the agreement.  Here, RTI did not allow Brown to negotiate the terms of the Agreement which lacks any consideration,

11

not even continued employment. Brown does not think that the Agreement is valid and

enforceable. As this Court explained in the February 2, 2009 opinion addressing the Agreement:

> Brown responds by arguing that the Agreement is unenforceable for a number of reasons. First, Brown claims that the Agreement provided no consideration to Ms. Brown. Under Ohio law, as both parties have indicated in their briefs, restrictive covenants are enforceable even when signed by an exisiting at-will employee who receives no new consideration other than continuation of employment. *Lake Land Employment Group of Akron v. Columber*, 101 Ohio St. 3d 242 (Ohio 2004). However, here, the Agreement given to Brown months after she began working for RTI states that it "shall not be construed as creating or evidencing any separate or independent obligation of the Employer . . . to retain [Brown] as its employee." Doc. 1 at Ex. A. Second, Brown argues that RTI has not presented evidence that Brown has or would disclose confidential information or other proprietary information. Third, Brown argues that the Agreement is unconscionable and a contract of adhesion because she could not negotiate it and RTI told Brown that she must sign the agreement or be fired.
> Brown also distinguishes *Goodrich*, 117 Ohio App. 493 from the case at bar. In *Goodrich*, the defendant employee threatened the plaintiff employer that he would use the employer's trade secrets for the proprietary benefit of a competitor that had hired the defendant. *Id*. at 498. Such statements, in combination with other evidence, caused the court to enjoin the defendant from working for the competitor. *Id*. at 499. Here, RTI does not suggest that Brown ever made similar statements as the defendant in *Goodich*.

*The RightThing*, 2009 WL 249694 at *10.

The Court reaches the same conclusion here as it did on February 2, 2009. Specifically,

"the Court need not address the Agreement at this juncture. Further evidentiary consideration is

required. This issue is preserved for dispositive motions or trial." *Id.* To address the issues

surrounding the Agreement, a threshold determination of its validity must be made. If the contract

is not valid, RTI may not pursue any claims on the basis of the Agreement. If the contract is valid,

the question will be whether the definition of "confidential information" found within the contract

is enforceable even if said information is not a trade secret or otherwise confidential. Again,

further discovery beyond counter-allegations is necessary to make these determinations. RTI is

far from establishing a strong likelihood of success on the merits of this issue for grant of injunctive relief.

**C. Trade secrets**

Brown renews her argument that the documents at issue in this case are not trade secrets. In her opposition brief (Doc. 42), Brown argues that the information in the documents produced by Manpower is widely known within the industry and was widely disseminated by RTI through its marketing efforts, including its website. *See Am. Nursing Care of Toledo, Inc. v. Leisure,* 609 F. Supp. 419, 432 (N.D. Ohio 1984).

With regard to client proposals, Brown claims that most of the language contained in various proposals is similar, and most of the information on the proposals can be found on Plaintiff's website, on other competitor's websites, or on industry websites.  However, Brown admits that the client proposals contain the prices proposed to the specific clients which were determined on a case by case basis.  With regard to case studies, Brown argues that many case studies are published in various outlets.  However, Brown admits that the case studies do not indicate the names of the clients (although some, Brown alleges, give clues as to who the clients are).  With regard to sample reports, Brown states that there is nothing special or unique about RTI's sample reports, and that some of RTI's metrics were published.

The Court is cognizant that much of the material submitted under seal is in wide circulation.  However, some is not.  Furthermore, "it is widely accepted that a trade secret can exist in a combination of characteristics each of which, by itself, is in the public domain." *Catalyst & Chem. Servs., Inc. v. Global Ground Support*, 350 F. Supp.2d 1, 9 (D.D.C. 2004), aff'd 173 Fed.Appx. 825 (Fed Cir. 2006); *see also Mike's Train House, Inc. v. Lionel, L.L.C.,* 472 F.3d

398, 411 (6th Cir. 2006). The Court can enjoin the of use or distribution of all of the documents for the benefit of the portions of the documents that are alleged trade secrets. For that reason, as well as the reasons stated in the Court's February 2, 2009 opinion, *See The RightThing*, 2009 WL 249694 at **7-9, RTI established a strong likelihood of success that portions of the documents in question contain trade secrets. As a result, Brown was prohibited from the use and disclosure of documents that contain information regarding: processes and suppliers, consumer sales data, profit margin data, recruitment cost calculator, and business proposals to clients.

## IV. Conclusion

For the reasons stated herein, Plaintiff The RightThing, LLC's motion for modification of the temporary restraining order is denied. (Doc. 39).

IT IS SO ORDERED.

              _s/ David A. Katz_
              DAVID A. KATZ
              U. S. DISTRICT JUDGE

14